UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS FRANCIS FARLEY,<br><br>       Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN,<br><br>       Defendant. | Case No.  16-cv-00656-VC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 12, 15 |

       The ALJ's decision is reversed and this case is remanded for an award of benefits.  The administrative record clearly demonstrates that Farley has a disability – nonconvulsive epilepsy – that should have caused the ALJ to find in his favor at step three.  Farley's failure to raise this issue on appeal does not prevent the Court from considering it, particularly given the obviousness of the error, the clarity and completeness of the record, and the fact that Farley raised the issue of an epilepsy listing at the administrative proceedings.

**I**

       Farley's counsel advanced only one argument on appeal.  That argument – based on the ALJ's failure to consider a 12.05 listing for intellectual impairments arising during childhood – is unsupported by the record and foreclosed by the facts Farley's counsel recites in his own moving papers.  Nothing suggests Farley suffered from intellectual impairments before age 22.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.05.  By all accounts, Farley himself has never claimed otherwise.  *See* A.R. 62-64, 510.  That alone precludes a 12.05 listing and would ordinarily end this appeal.

       But another listing does apply, and it's clear from the record that Farley met every element of it before his last insured date:

> 11.03 Epilepsy — nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03 (effective Apr. 29, 2013).[1]

Farley suffers from nonconvulsive epilepsy, with rare convulsive seizures. A.R. 17, 485. As of December 13, 2011, Farley's seizures were occurring more than once weekly in spite of more than three months of prescribed treatment.[2] A.R. 485, 493-94.[3] Farley's typical seizure pattern is documented by detailed descriptions from Farley's wife, A.R. 493, and from Farley's neurologist. A.R. 485-89; *see also* A.R. 494. These descriptions are consistent with one another and include all associated phenomena. *See, e.g.*, A.R. 485-86 (citing strange smells, staring, confusion, aura, lip smacking, loss of consciousness, and a risk of choking during the seizure; and citing confusion and fatigue for a period after the seizure). Based on these descriptions, it's clear that Farley experiences both alteration of awareness and transient postictal manifestations of unconventional behavior, and that Farley's condition interferes significantly with his activities. Although the ALJ did not cite or rely on this evidence in reaching his decision, he has already credited it. A.R. 24 ("The undersigned finds this report and opinions of [the neurologist] are well supported by the evidence of record; further, the doctor is familiar with the claimant's treatment history, medication effects, and ongoing issues. Accordingly, this opinion has been given

---

[1] At the time of the ALJ's decision, nonconvulsive epilepsy was listed at 11.03. The current list of impairments has a single, consolidated epilepsy listing at 11.02.

[2] The Commissioner suggested at the summary judgment hearing that because Farley occasionally failed to take his medication, he couldn't be said to have 3 months of "prescribed treatment." The Commissioner appears to be relying on the fact that Farley sometimes missed his pills when he couldn't afford them or couldn't tolerate their side effects. *See* A.R. 487. This is not evidence of Farley's noncompliance with prescribed treatment. *See id.* (certifying Farley as "compliant with taking medication"). It's evidence of the limitations of his prescribed treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

[3] Although the neurologist's seizure report is dated March 27, 2012, almost three months after the last insured date, it is based on the neurologist's last examination of Farley on December 13, 2011, and therefore retroactive to that date. A.R. 24, 485.

great weight . . . .").

In light of the already-credited evidence supporting an 11.03 listing, the ALJ's discussion of step three was conclusory and unsupported. The ALJ stated that "[n]o credible treating or examining physician" provided evidence to support a listed disability. A.R. 21. This statement is squarely contracted by the very evidence the ALJ used to deny Farley at step five. A.R. 24. The same neurologist and the same seizure report figuring into the conclusion that Farley could work as "a sandwich maker, hand packer, and mail clerk" also stated that twice weekly Farley had seizures causing confusion and loss of consciousness, requiring Farley to be rolled onto his side to allow the saliva to drain from his mouth. A.R. 24, 486. The ALJ made no mention of this evidence at step three, and he offered no explanation for his inconsistent treatment of the medical evidence from Farley's physician, which apparently diverged from one page to the next of the same seizure report. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); A.R. 486-87. The ALJ suggested Farley was malingering. A.R. 23 ("It appears the limited range of daily activities is a lifestyle choice . . . .").[4] But even if the Court accepted this conclusion at step five, the ALJ's decision at step three remains at odds with the medical evidence otherwise relied upon. The decision must be reversed.

## II

The Commissioner disputes this Court's power to raise issues on its own. Supp. Br. (Dkt. No. 21) at 1-2. Ordinarily, where a party fails to raise a nonjurisdictional issue, this Court won't consider it – and it certainly won't raise the issue sua sponte as grounds for granting summary judgment. But appeals from a denial of Social Security benefits differ from ordinary civil litigation. The underlying claims process is nonadversarial. *Sims v. Apfel*, 530 U.S. 103, 110 (2000). Although claimants carry the burden of demonstrating that they qualify for benefits, they

---

[4] Although it doesn't bear on the outcome here, this adverse credibility determination is not properly supported. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Among the evidence in the seizure report that the ALJ credited but didn't discuss was the neurologist's statement that Farley's seizure medication caused lethargy and lack of alertness. A.R. 487; *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

aren't left entirely to their own devices, and lapses of pleading or procedure can't be used to withhold benefits a claimant is otherwise clearly entitled to. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999); *Smolen*, 80 F.3d at 1288. Likewise, at the appeals stage, the claimant must make his own arguments for remand, but that doesn't relieve the district court of its duty to make "a full review of the facts" and "an independent determination as to whether the [Commissioner's] findings are supported by substantial evidence." *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). In this "beneficent" and "tolerant" context, there is no reason to treat the failure to raise an error as reason for actively ignoring it, as the Commissioner suggests. *Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The scattered cases confronting this question have reached similar conclusions.[5]

The Commissioner cites no authority directly on point with its position. Instead, the Commissioner conflates a series of authorities addressing three related matters – waiving appeal on an issue, failing to brief an issue, and failing to meet the burden of proof – and submits these as a body of law barring this Court from considering "any issue not raised and developed" in the plaintiff's briefing. Supp. Br. (Dkt. No. 21) at 1. These authorities are either inapplicable to Farley's case or unhelpful to the Commissioner's position.

Represented claimants waive appeal on any argument that wasn't brought to the ALJ. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *see also Sims*, 530 U.S. at 112. According

---

[5] *See, e.g.*, *Taylor-Tillotson v. Colvin*, No. 13-80907-CIV-WM, 2014 WL 7211888, at *13 (S.D. Fla. Dec. 18, 2014); *Mangan v. Colvin*, No. 12 C 7203, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014); *Covarrubias v. Astrue*, No. ED CV 08-1696-PLA, 2009 WL 4810176, at *7 (C.D. Cal. Dec. 8, 2009); *Shumaker v. Astrue*, 657 F. Supp. 2d 1178, 1185 (D. Mont. 2009); *Womack v. Astrue*, No. CIV-07-167-W, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008); *Litzsinger v. Astrue*, No. 06-CV-01794-EWN, 2008 WL 420033, at *6 (D. Colo. Feb. 13, 2008); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 452 n.24 (N.D.N.Y. 2005); *Koschnitzke v. Barnhart*, 293 F. Supp. 2d 943, 949 n.9 (E.D. Wis. 2003); *see also Wenzlick v. Astrue*, No. CIV. 08-CV-12414, 2009 WL 2777711, at *1-2 (E.D. Mich. Aug. 28, 2009); *cf. Igonia v. Califano*, 568 F.2d 1383, 1387 (D.C. Cir. 1977) ("While a remand request is normally made by a party, there is no reason why a court may not order the remand sua sponte.").

to the Commissioner, Farley's attorney never raised the possibility of an 11.03 listing at the administrative hearing, and this Court therefore can't consider it.  Supp. Br. (Dkt. No. 21) at 1-3.  But the record before the ALJ was replete with references to Farley's epilepsy.  A.R. Exs. 3E, 4E, 7E, 8E, 9E, 11E, 12E, 13E, 14E, 19E, 6F, 10F, 11F, 12F, 15F, 16F, 17F, 18F, 19F, 20F, 21F.  The Social Security Administration itself cited Farley's epilepsy in its disability determination and denial notice.  A.R. 100, 101.  And the transcript of the administrative hearing suggests Farley's original attorney made every effort to bring an epilepsy listing to the ALJ's attention:

> ATTY:  So, can I say something, Judge, first?
> ALJ:  Yeah.  Yeah, you can say something and I think that's all we're going to be doing today, but go ahead –
> ATTY:  Okay.  All right.
> ALJ:  – say whatever you want to say.
> ATTY:  The Claimant has not alleged a mental health impairment.
> ALJ:  No.
> ATTY:  He's alleged a seizure disorder.
> ALJ:  Right.
> ATTY:  And I think since we were last at hearing a year ago we have confirmation that he has a seizure disorder.
> . . .
> ATTY:  So we've always come here on, you know, neurological impairment.  And although the MRI was done in Brazil six years ago, at 11F-14 Dr. Gansaeuer says that there is suggestive evidence showing possible right temporal gliosis, and an abnormal EEG due to independent bilateral slowing.  So often in seizure disorders we don't even have an abnormal EEG.  So here we have an abnormal EEG to corroborate the seizure, the partial and convulsive, and then an MRI.  And it's foreign, but the U.S. doctors have interpreted it.  It's abnormal, and certainly supporting the fact that this gentleman has a seizure disorder. . . .
> ALJ:  All right.
> ATTY:  So –
> ALJ:  Okay.  I got it.

A.R. 62-64.  Whether Farley's attorney recited the words "section 11.03" in the ALJ's presence is beside the point.  At the time of the ALJ's decision, epilepsy was listed only at 11.02 and 11.03, and nonconvulsive epilepsy only at 11.03.  Farley's repeated, documented claims of epilepsy and focal seizures could not have referred to any other listed disability.  The attorney's discussion of a "neurological impairment" could not have referred to any other listed disability.  Even with a represented claimant, the sum of evidence and argument supporting an 11.03 listing required that the ALJ develop the record and consider that listing at step three.  *See, e.g.*, *Ritchie v. Astrue*, No.

1:07-CV-1349-WTL-TAB, 2009 WL 196350, at *3 (S.D. Ind. Jan. 22, 2009); *see also Smolen*, 80 F.3d at 1288.  And indeed, as the Commissioner conceded at the summary judgment hearing, the ALJ seems on some level to have understood this, as he expressly rejected any disability falling within section 11.00 – a section relevant to Farley only by virtue of his epilepsy.  A.R. 21.  The 11.03 listing was thus not only raised with the ALJ, but considered and rejected by the ALJ.  It could not have been waived for appeal.

The Commissioner argues that a claimant who fails to develop an issue in his briefing at the district court "waives consideration of that issue."  Supp. Br. (Dkt. No. 21) at 1.  But here the Commissioner refers to "waiver" of a different kind – not the failure to exhaust issues at the earlier administrative hearing, but the failure to brief issues at the current proceeding in accordance with the applicable rules of procedure.  Under this argument, Farley's new issue isn't so much waived as it is untimely:  Farley has "waived" only his right to submit briefing on the issue for the Court's consideration.  But that hardly divests the Court of its power to raise the issue on its own – least of all when the Court first gives the Commissioner notice and an opportunity to respond.  *Cf. Singleton v. Wulff*, 428 U.S. 106, 121 (1976).  The Ninth Circuit, for example, "will review an issue not present in an opening brief" for good cause shown, to prevent a manifest injustice, or where failure to raise the issue hasn't prejudiced the opposing party.  *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992); *see also Paul v. Colvin*, No. 12-CV-02046-AJB-BGS, 2013 WL 5797427, at *5 (S.D. Cal. Oct. 28, 2013).  All three conditions apply here.

Lastly, the Commissioner suggests that failing to brief an issue means that a claimant can't meet his burden on appeal.  Supp. Br. (Dkt. No. 21) at 1-2.  The Court sees no reason that should be true.  The burden for remand remains the same.  If the record, standing alone, establishes legal error or the lack of substantial evidence, the burden is met.

### III

In this case, remand for reconsideration would serve no useful purpose.  *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  The ALJ "failed to provide legally sufficient reasons for rejecting the evidence" of an 11.03 listing.  *Id.*  The record – along with the ALJ's

6

*existing* approach to the credibility and weight of the evidence – makes clear that "the ALJ would be required to find the claimant disabled" if the overlooked evidence were considered. *Id.* And lastly, "there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.*

The Commissioner argues that the Social Security Administration is entitled to reconsideration because the evidence supporting an 11.03 listing has yet to be addressed by an ALJ. As an initial matter, this isn't true, since the ALJ already reviewed the evidence, accorded it "great weight" at step five, and ignored it at step three. But more fundamentally, the Commissioner asserts a right she doesn't have. The Social Security Administration has no freestanding right to rectify its own errors on reconsideration. *Id.* at 595. And the case for reconsideration, rather than remand for an immediate award, can hardly be less compelling than where the ALJ's own credibility determinations provide the basis for an award. It is true that an ALJ hasn't had the opportunity to consider an onset date tied to the 11.03 listing. But as the existing record is adequately developed on the issue of Farley's seizure disorder, there's no need to disturb the ALJ's conclusions at step three except insofar as they're contradicted by the medical evidence he already credited. That evidence dates from December 13, 2011 – after Farley's alleged onset date, but before his last insured date.[6]

---

[6] The record is adequately developed in spite of, rather than because of, the ALJ's work. At each administrative hearing, the ALJ called a single independent medical expert who was qualified only as a psychiatrist and therefore discouraged from or incapable of testifying about Farley's seizures. *See* A.R. 78-79 ("[Attorney]: The first [question] is did you have a chance to review the seizure questionnaire from Dr. Gansaeuer? [Dr. Golon, medical expert at the first hearing]: Yes. I did but the Judge told me not to comment on the medical issues. . . . If you ask me to comment on do I feel he's close to meeting a seizure listing, I believe he is but it's not my area of expertise."); A.R. 51 ("[Dr. McDevitt, medical expert at the second hearing]: . . . [T]he only thing that sounds strange to me is that [Farley] has this – the number of seizures is not very many. It's – they claimed three per week. And, but he has this postictal state lasting anywhere from a few – from 30 minutes to a whole month. I'm not quite sure what that means. And again, that would – you'd have to have a neurologist give an opinion about that."). Despite their limitations, both medical experts gave testimony suggesting that Farley might meet some or all the elements of an epilepsy listing. Yet the ALJ appears to have treated Dr. Golon's limited testimony on seizure disorders – testimony *the ALJ had himself limited* based on the doctor's lack of neurological expertise – as creditable evidence of Farley's failure to meet an epilepsy listing. A.R. 63 ("ALJ: Well, that's why I felt that Dr. Gol[o]n's . . . testimony was so confusing to me when he – he did not testify that the Claimant meets a seizure disorder, he said the Claimant meets 12.02 –").

Farley's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The decision of the ALJ is reversed. This case is remanded under Sentence Four for a calculation of benefits based on an onset date of December 13, 2011. 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: January 24, 2017

_____
VINCE CHHABRIA
United States District Judge